1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

9  Charles Stephanski, on his own behalf
10 and on behalf of those similarly situated,

11                    Plaintiff,

12 v.

13 SUPER CARE, INC., d/b/a
   SUPERCARE HEALTH,
14
15                    Defendant.

CASE NO.:

**COMPLAINT – CLASS ACTION**
1. **Negligence**
2. **Negligence Per Se**
3. **Negligence Per Se**
4. **Violation of California
   Confidentiality of Medical
   Information Act ("CMIA"), Cal.
   Civ. Code § 56,** *et seq*
5. **Injunctive Relief**

(Jury Trial Demanded)

16
17
18
19
20
21
22
23
24
25
26
27
28

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

Plaintiff Charles Stephanski ("Plaintiff" or "Stephanski"), by and through his attorneys of record, upon personal knowledge as to his own acts and experiences, and upon information and belief as to all other matters, files this complaint against Super Care, Inc. ("Super Care" or "Defendant") and alleges the following.

## INTRODUCTION AND NATURE OF ACTION

1.      Plaintiff brings this class action complaint on behalf of a class of persons harmed by Super Care's failure to safeguard, monitor, maintain and protect highly sensitive patient personal and health information, or Personal Health Information ("PHI") and Personally Identifiable Information ("PII") (collectively "Sensitive Information").

2.      Between July 23, 2021 and July 27, 2021, a malicious actor breached Super Care, resided undetected in its data environment for months, and successfully stole a host of patient information from Super Care ("Data Breach").[1]

3.      On July 27, 2021, Super Care discovered that some of its data was copied and stolen from its digital environment by a hacker.[2]  To resolve the breach, Super Care had to make drastic changes to secure its network, including implementing security measures that should have already been installed on any reasonably protected system that, as was the case with Super Care's, contained highly sensitive patient information.  Super Care also conducted a forensic analysis following the breach, thereby confirming the existence and wide scope of the Data Breach.[3]  However, because patient information was copied and stolen from Super Care, no changes to or investigations of Super Care's systems can undo the fact that Sensitive Information is now in the hands of cyber criminals.

---

[1] https://supercarehealth.com/supercareprotects/ (last visited May 2, 2022).
[2] *Id.*
[3] *Id.*

1

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

4.      On February 4, 2022, Super Care determined that the impacted files contained highly sensitive information relating to certain patients, including name, address, date of birth, hospital or medical group, patient account number, medical record number, health insurance information, testing/diagnostic/treating information, other health related information, and claim information.[4]

5.      Even so, Super Care waited until March 25, 2022, approximately eight months after it first learned of the Data Breach, to issue its first press release[5] announcing the Data Breach.  The press release stated that Super Care experienced a "data security incident involving personal information relating to its patients, patients/members of its partner organizations and others."[6]

6.      From July 23, 2021 through March 25, 2022, hackers had the opportunity to misuse this information without the impacted patients knowing or having the opportunity to implement measures to protect themselves.

7.      As a result of the lax security on Super Care's stored network, 318,379 Super Care patients, including Plaintiff, have had the most sensitive details of their lives and identities, including Sensitive Information involving highly invasive medical treatments and diagnostics, and information on minor children, accessed and stolen by malicious cybercriminals.

8.      Because the Data Breach compromised Plaintiff's Sensitive Information, Plaintiff and a proposed Class of similarly situated individuals (defined below) have been placed in an immediate and continuing risk of identity theft related harm.

9.      As a result of Super Care's conduct, Plaintiff and the Class have and will be required to continue to undertake expensive and time-consuming efforts to mitigate the actual and potential impact of the Data Breach on their lives by, among

---

[4] *Id.*
[5] *Id.*
[6] *Id.*

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

other things, placing freezes and alerts with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, closely reviewing and monitoring their credit reports and accounts for unauthorized activity, changing passwords on medical portals, and requesting and maintaining accurate medical records outside of those kept by medical providers. Minors may not be able to monitor the impact of the Data Breach on their lives for several years.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, there are more than 100 members in the proposed class, and at least one member of the class is a citizen of a state different from Defendant.

11.     This Court has personal jurisdiction over Defendant because Defendant is headquartered in this District and does substantial business in California, and a substantial part of the relevant events and omissions giving rise to Plaintiff's claims occurred in this District.

12.     Venue is proper because Defendant is headquartered in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

### *Plaintiff*

13.     Plaintiff Stephanski is a natural person domiciled in the State of California. His permanent residence is in San Jose, California.

14.     Stephanski started receiving services from Defendant as early as 2005. In connection with these medical services, Stephanski provided Defendant with various forms of PHI and PII, including, without limitation, name, address, social security number, date of birth, medical history, and medical insurance information.

CLASS ACTION COMPLAINT                           3

Through the services Stephanski received, Super Care created, collected, maintained, and stored PHI and PII for Stephanski, including, without limitation, medical treatments or diagnoses, prescriptions, or insurance claim data.

15. Stephanski is one of the numerous Super Care patients whose PHI and PII was disclosed during the Data Breach. Since the Data Breach, Stephanski has needed to change approximately eighty passwords to avoid wrongdoers from coopting control over his financial, social media, and other accounts.

16. Defendant sent Stephanski a letter notifying him that his PHI and PII data was part of the Data Breach. Attached hereto as Exhibit A is a copy of the notice Stephanski received from Super Care.

***Defendant***

17. Defendant Super Care is a California corporation with its principal place of business at 8345 Firestone Blvd., Ste. 210 Downey, California 90241. Super Care provides services in other states, including Arizona, Texas, Washington, Nevada and New Mexico. Super Care describes itself as a "Comprehensive Post-acute Care Respiratory Services Company Focused on Managing High-Risk Respiratory Patients In Their Homes."[7] It treats millions of patients annually and has a team of more than 500 members.[8]

## FACTUAL BACKGROUND

18. Super Care, founded more than forty-five years ago, provides a broad range of respiratory therapies and services, including ventilation, oxygen, nebulizer and nebulized medications, CPAP/BiPAP machines, airway clearance and

---

[7] https://supercarehealth.com/homepage/who-we-are/overview/ (last visited May 2, 2022).

[8] *Id.*

4

CLASS ACTION COMPLAINT

mobilization, specialty pharmacy, home medical equipment, enteral supplies, and nutrition.[9]

19.     To obtain healthcare services, Super Care requires patients to provide their PHI and PII.  Super Care then compiles, stores and maintains the highly sensitive PII and PHI.  Super Care serves millions of individuals every year, meaning it has a massive repository of Sensitive Information that acts as an attractive, and predictable, target for data thieves.

20.     Super Care maintains a Patient Handbook, with includes a Notice of Privacy Practices and Patient Rights and Responsibilities.

21.     Super Care's Notice of Privacy Practices describes how medical information about patients may be used and disclosed.[10]  It further states that Super Care is "required by law to maintain the privacy of [patients'] health information" and it informs patients they have a right to have "confidentiality, privacy, security and property respected at all times."[11]

22.     Plaintiff and the Class had a reasonable expectation that Super Care would reasonably protect the Sensitive Information provided to it or created by it through the course of treatment.  Super Care had a legal obligation to reasonably safeguard the information against security breaches or other types of theft and misuse and, in fact, was the only entity capable of keeping its repository of Sensitive Information on its patients safe.

23.     As described throughout this Complaint, Super Care did not reasonably protect, secure, or store Plaintiff's and the Class's Sensitive Information prior to, during, or after the Data Breach.

---

[9] *Id.*

[10] https://supercarehealth.com/homepage/who-we-serve/patients/patient-handbook/ (last visited May 2, 2022).

[11] *Id.*

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

## I.     **The Data Breach**

24.     According to Super Care, between July 23 and July 27, 2021, a malicious actor gained unauthorized access to the Super Care network.  This network contained sensitive personal, medical, financial, and insurance information of its current and former patients, including minor patients.  Upon information and belief, during this time, malicious actors maintained unfettered access to Super Care's network and copied and exported substantial amounts of PII and PHI.

25.     Super Care did not disclose the existence of the Data Breach to its patients or the general public until March 25, 2022, months after it initially learned of the Data Breach.  Super Care sent victims of the Data Breach notices and posted a notice of the Data Breach on its website.

26.     The Data Breach notice did not provide any guidance to victims regarding Super Care's plan to prevent additional data breaches in the future.  Rather, the notices recommended Plaintiff and the Class take several time-consuming steps on their own to mitigate the risk of future fraud and identity theft, such as creating fraud alerts and credit freezes.

27.     Defendant did not offer any credit monitoring or identity protection services, leaving patients to deal with the fallout of its breach themselves.  Instead, Super Care offered victims some free resources, such a list of companies that provide free credit reports every twelve months.

28.     Given that Defendant collected, maintained, and stored the PII and PHI of Plaintiff and the Class, Defendant was obligated to implement reasonable measures to prevent and detect cyber-attacks, such as those recommended by the Federal Trade Commission or other agencies and required by the Health Insurance Portability and Accountability Act.  That obligation stems from the foreseeable risk of a Data Breach given that Super Care collected, stored, and had access to a host

6

CLASS ACTION COMPLAINT

of highly sensitive patient records and data and, additionally, because of other highly publicized data breaches at different healthcare institutions that put Defendant on notice of the possibility that the repository of Sensitive Information it had would be a targeted and needed to be protected.

29.     The Data Breach itself and information Super Care has disclosed to date indicates Super Care failed to implement reasonable measures to prevent cyber-attacks and the exposure of Sensitive Information.

30.     Despite the highly sensitive nature of the information Super Care created and stored, and the prevalence of health care data breaches, Super Care inexplicably failed to take appropriate steps to safeguard the PII and PHI of Plaintiff and the Class from being compromised.

## II.     Data Breaches Lead to Identity Theft and Cognizable Injuries

31.     The personal, health, and financial information of Plaintiff and the Class, is valuable and has become a highly desirable commodity to data thieves.

32.     Defendant's failure to reasonably safeguard Plaintiff's and the Class's sensitive PHI and PII has created a serious risk to Plaintiff and the Class, including both a short-term and long-term risk of identity theft.

33.     Identity theft occurs when someone uses another's personal and financial information such as that person's name, account number, Social Security number, driver's license number, date of birth, and/or other information, without permission, to commit fraud or other crimes.

34.     According to experts, one out of four data breach notification recipients becomes a victim of identity fraud.[12]

---

[12] *Study Shows One in Four Who Receive Data Breach Letter Become Fraud Victims,* ThreatPost.com (last visited May 12, 2022), https://threatpost.com/study-shows-one-four-who-receive-data-breach-letter-become-fraud-victims-022013/77549/

7

CLASS ACTION COMPLAINT

35.     Stolen Sensitive Information is often trafficked on the "dark web," a heavily encrypted part of the Internet that is not accessible via traditional search engines and is frequented by criminals, fraudsters, and other wrongdoers.  Law enforcement has difficulty policing the "dark web," which allows users and criminals to conceal identities and online activity.

36.     Moreover, according to Robert P. Chappell, Jr., a law enforcement professional who wrote "Child Identity Theft: What Every Parent Needs to Know," fraudsters can steal and use a minor's information until the minor turns eighteen years old before the minor even realizes he or she has been the victim of an identity theft crime.[13]

37.     The risk to potential minor Class members is substantial given their age and lack of established credit.  The information can be used to create a "clean slate identity," and use that identity for obtaining government benefits, fraudulent tax refunds, and other scams.  There is evidence that children are 51% more likely to be victims of identity theft than adults.[14]

38.     Purchasers of Sensitive Information use it to gain access to the victim's bank accounts, social media, credit cards, and tax details.  This can result in the discovery and release of additional Sensitive Information from the victim, as well as Sensitive Information from family, friends, and colleagues of the original victim.  Victims of identity theft can also suffer emotional distress, blackmail, or other forms of harassment in person or online.  Losses encompass financial data and, tangible money, along with unreported emotional harms.

39.     The FBI's Internet Crime Complaint (IC3) 2019 estimated there was more than $3.5 billion in losses to individual and business victims due to identity

---

[14] Avery Wolfe, *How Data Breaches Affect Children*, Axion Cyber Sols. (Mar. 15, 2018) (last visited May 12, 2022), https://axiomcyber.com/data-breach/how-data-breaches-affect-children/

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

fraud in that year alone.  The same report identified "rapid reporting" (which Super Care did not do here) as a critical tool to help law enforcement and potential victims stop fraudulent transactions and mitigate losses.

40.     Super Care did not rapidly, or even reasonably, report to Plaintiff and the Class that their Sensitive Information had been stolen.  Rather, they waited eight months to inform patients like Plaintiff that their highly Sensitive Information was impacted and stolen during the Data Breach.

41.     The Federal Trade Commission ("FTC") has recognized that consumer data is a lucrative (and valuable) form of currency.  In an FTC roundtable presentation, former Commissioner Pamela Jones Harbour underscored this point by reiterating that "most consumers cannot begin to comprehend the types and amount of information collected by businesses, or why their information may be commercially valuable.  Data is currency."[15]

42.     The FTC has also issued, and regularly updates, guidelines for businesses to implement reasonable data security practices and incorporate security into all areas of the business.  According to the FTC, reasonable data security protocols require:

(1)  encrypting information stored on computer networks;
(2)  retaining payment card information only as long as necessary;
(3)  properly disposing of personal information that is no longer needed or can be disposed pursuant to relevant state and federal laws;
(4)  limiting administrative access to business systems;
(5)  using industry unapproved activity;
(6)  monitoring activity on networks to uncover unapproved activity;
(7)  verifying that privacy and security features function property;
(8)  testing for common vulnerabilities; and

---

[15] Statement of FTC Commissioner Pamela Jones Harbour—Remarks Before FTC Exploring Privacy Roundtable, (Dec. 7, 2009) (last visited May 12, 2022) https://www.ftc.gov/news-events/news/speeches/remarks-ftc-exploring-privacy-roundtable

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

(9)   updating and patching third-party software.[16]

43.   The United States Government and the United States Cybersecurity & Infrastructure Security Agency, recommends several similar and supplemental measures to prevent and detect cyber-attacks, including, but not limited to: implementing an awareness and training program, enabling strong spam filters, scanning incoming and outgoing emails, configuring firewalls, automating anti-virus and anti-malware programs, managing privileged accounts, configuring access controls, disabling remote desktop protocol, and updating and patching computers.

44.   The FTC cautions businesses that failure to protect Sensitive Information and the resulting data breaches can destroy consumers' finances, credit history, reputation, and can take time, money, and patience to resolve the effect.[17] Indeed, the FTC treats the failure to implement reasonable and adequate data security measures—like Super Care failed to do here-- as an unfair act or practice prohibited by Section 5(a) of the FTC Act.

### III.   The Healthcare Industry is Particularly Susceptible to Cyber Attacks

45.   A 2010 report focusing on healthcare data breaches found the "average total cost to resolve an identity theft related incident … came to about $20,000."[18]   According to survey results and population extrapolations from the National Study on Medical Identity Theft report from the Ponemon Institute, nearly

---

[16] *Start With Security, A Guide for Business,* FTC (last visited May 12, 2022) https://www.bulkorder.ftc.gov/publications/start-security-guide-business#:~:text=The%20FTC's%2050%2B%20data%20security,size%20and%20in%20any%20sector.

[17] *See* Taking Charge, What to Do if Your Identity is Stolen, FTC, at 3 (2012) (last visited May 12, 2022), https://www.consumer.ftc.gov/sites/default/files/articles/pdf/pdf-0014-identity-theft.pdf

[18] *See* Elinor Mills, *Study: Medical identity theft is costly for victims,* CNET (March 3, 2010), (last visited Jan. 11, 2021), https://www.cnet.com/tech/services-and-software/study-medical-identity-theft-is-costly-for-victims/

10

50% of victims reported losing their healthcare coverage because of a data breach and nearly 30% reported an increase in their insurance premiums.[19] Several individuals were unable to fully resolve their identity theft crises. Healthcare data breaches are an epidemic and they are crippling the impacted individuals—millions of victims every year.[20]

46.   According to an analysis of data breach incidents reported to the U.S. Department of Health and Human Services and the media, from 2015 and 2019, the number of healthcare related security incidents increased from 450 annual incidents to 572 annual incidents, likely a conservative estimate. [21]

47.   According to the Verizon Data Breach Investigations Report, the health care industry, including hospitals and other providers, experienced 655 known data breaches, 472 of which had confirmed data disclosures in 2021.[22] For the tenth year in a row, the healthcare industry has seen the highest impact from cyber-attacks of any industry.[23]

48.   As a healthcare provider, with millions of patients, Super Care knew or should have known the importance of protecting the Sensitive Information

---

[19] *Id.*

[20] *Id.*

[21] Heather Landi, *Number of patient records breached nearly triples in 2019*, FIERCE HEALTHCARE (Feb. 20, 2020), https://www.fiercehealthcare.com/tech/number-patient-records-breached-2019-almost-tripled-from-2018-as-healthcare-faces-new-threats#:~:text=OVer%2041%20million%20patient%20records,close%20to%2021%20million%20records (last visited May 12, 2022).

[22] Verizon, 2021 Data Breach Investigations Report: Healthcare NAICS 62 (2021) (last visited May 12, 2022), https://www.verizon.com/business/resources/reports/dbir/2021/data-breach-statistics-by-industry/healthcare-data-breaches-security/.

[23] *Five worthy reads: The never-ending love story between cyberattacks and healthcare,* ManageEngine, https://blogs.manageengine.com/corporate/manageengine/2021/08/06/the-never-ending-love-story-between-cyberattacks-and-healthcare.html#:~:text=According%20to%20Infosec%20Institute%2C%20credit,is%20%2458%20per%20stolen%20record (last visited May 12).

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

entrusted to it.  Super Care also knew or should have known of the foreseeable, and catastrophic consequences if its systems were breached.   These consequences include substantial costs to Plaintiff and the Class because of the Data Breach. Despite this, Defendant failed to take reasonable data security measures to prevent or mitigate losses from cyberattacks.

## IV.   Plaintiff and the Class's PHI and PII are Valuable.

49.    Unlike financial information, like credit card and bank account numbers, the PHI and certain PII impacted in the Data Breach cannot be easily changed.  Dates of birth, medical record history, and patient data are relevant to a person's identity for the duration of his or her life.  Medical histories, for instance, are inflexible.  For these reasons, these types of information are the most lucrative and valuable to hackers.[24]

50.    Birth dates, Social Security numbers, addresses, employment information, income, and similar types of information can be used to open several credit accounts on an ongoing basis rather than exploiting just one account until it is canceled.[25]  For that reason, cybercriminals on the dark web are able to sell this type of information for large profits and are often then used for fraudulent tax returns.[26]

51.    Consumers place a considerable value on their Sensitive Information and the privacy of that information.   One 2002 study determined that U.S. consumers highly value a website's protection against improper access to their

---

[24] *Calculating the Value of a Data Breach – What Are the Most Valuable Files to a Hacker?* Donnellon McCarthy Enters, https://www.dme.us.com/2020/07/21/calculating-the-value-of-a-data-breach-what-are-the-most-valuable-files-to-a-hacker/ (last visited May 12, 2022).

[25] *Anthem hack: Personal data stolen sells for 10x Price of Stolen Credit Card Numbers*, Tim Greene, https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited May 12, 2022).

[26] *Id.*

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

Sensitive Information, between $11.33 and $16.58 per website.  The study further concluded that to U.S. consumers, the collective "protection against error, improper access, and secondary use of personal information is worth between $30.49 and $44.62.[27]  This data is approximately twenty years old, and the dollar amounts would likely be exponentially higher today.

52.   Super Care's Data Breach exposed a variety of Sensitive Information, including PII and PHI.

53.   The Federal Bureau of Investigation ("FBI") has found instances of PHI selling for fifty times the price of stolen Social Security numbers or credit card numbers because of its value in orchestrating a wide variety of identity theft and fraud.[28]

54.   Other reports found that PHI is ten times more valuable on the black market than credit card information.[29]  This is because one's personal health history, including prior illness, surgeries, diagnoses, mental health, and the like cannot be changed or replaced, unlike credit card information and even, under difficult circumstances, social security numbers.  Credit card information and PII sell for $1-2 on the black market, but PHI can sell for as much as $363 according to the Infosec Institute.[30]

---

[27] 11-Horn Hann, Kai-Lung Hui, *et al*, *The Value of Online Information Privacy: Evidence from the USA and Singapore,* at 17. Marshall Sch. Bus., Univ. So. Cal. (Oct. 2002), https://www.comp.nus.edu.sg/~ipng/research/privacy.pdf (last visited May 12, 2022).

[28] *FBI Cyber Division Bulletin: Health Care Systems and Medical Devices at Risk for Increased Cyber Intrusions for Financial Gain*, FBI (April 8, 2014), https://publicintelligence.net/fbi-health-care-cyber-intrusions/ (last visited May 12, 2022).

[29] *Anthem hack: Personal data stolen sells for 10x Price of Stolen Credit Card Numbers*, Tim Greene, https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html (last visited May 12, 2022).

[30] *Hackers Selling Healthcare Data in the Black Market*, INFOSEC, https://resources.infosecinstitute.com/topic/hackers-selling-healthcare-data-in-the-black-market/ (last visited May 12, 2022).

CLASS ACTION COMPLAINT

55.    Cybercriminals recognize and exploit the value of PHI and PII.  The value of PHI and PII is the foundation to the cyberhacker business model.

56.    Because the Sensitive Information exposed in the Super Care Data Breach is permanent data, there may be a gap of time between when it was stolen and when it will be used.  The damage may continue for years.  Plaintiff and the Class now face years of monitoring their financial and personal records with a high degree of scrutiny.  The Class has incurred and will incur this damage in additional to any fraudulent use of their Sensitive Information.

## V.    __Defendant's Conduct Violates HIPAA.__

57.    Under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), individuals' health information must be:

> [P]roperly protected while allowing the flow of health information needed to provide and promote high quality health care and to protect the public's health and well-being.  The Privacy Rule strikes a balance that permits important uses of information while protecting the privacy of people who seek care and healing.[31]

58.    HIPAA is a "federal law that required the creation of national standards to protect sensitive patient health information from being disclosed without the patient's consent or knowledge."[32]   The rule requires appropriate administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of electronic protected health information.[33]

59.    HIPAA defines sensitive patient personal and health information as: (1) Name; (2) Home and work addresses; (3) Home and work phone numbers; (4) Personal and professional email addresses; (5) Medical records; (6) Prescriptions; (7) Health insurance information; (8) Billing information; (9) Social Security

---

[31] U.S. Dept. of Health & Human Services: Summary of the HIPAA Privacy Rule (last visited May 12, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/laws-regulations/index.html.

[32] *Id.*

[33] *Id.*

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

number; (10) Spouse and children's information; and/or (11) Emergency contact information.[34]

60.    To ensure protection of this private and sensitive information, HIPAA mandates standards for handling PHI—the very data Super Care failed to protect. The Data Breach resulted from Defendant's failure to comply with several of these standards:

a.  Violation of 45 C.F.R. § 164.306(a)(1): failing to ensure the confidentiality and integrity of electronic protected health information that Defendant creates, receives, maintains, and transmits;

b.  Violation of 45 C.F.R. § 164.312(a)(1): Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights;

c.  Violation of 45 C.F.R. § 164.308(a)(1): Failing to implement policies and procedures to prevent, detect, contain, and correct security violations;

d.  Violation of 45 C.F.R. § 164.308(a)(6)(ii): Failing to identify and respond to suspected or known security incidents; mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity

e.  Violation of 45 C.F.R. §164.306(a)(2): Failing to protect against any reasonably–anticipated threats or hazards to the security or integrity of electronic protected health information;

---

[34] *Id.*

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

f. Violation of 45 C.F.R. §164.306(a)(3): Failing to protect against any reasonably anticipated uses or disclosures of electronically protected health information that are not permitted under the privacy rules regarding individually identifiable health information;

g. Violation of 45 C.F.R. §164.306(a)(94): Failing to ensure compliance with HIPAA security standard rules by its workforce;

h. Violation of 45 C.F.R. §164.502, et seq: Impermissibly and improperly using and disclosing protected health information that is, and remains, accessible to unauthorized persons; and

i. Violation of 45 C.F.R. §164.530(c): Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard protected health information.

61. Despite Super Care's failure to reasonably protect Plaintiff's and the Class's Sensitive Information, it has not offered any compensation or remedy.

## CLASS DEFINITION AND ALLEGATIONS

62. Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and all others similar situated, as representative of the following Class and California Subclass:

The Class is defined as follows:

**All persons who received a notice from Super Care that their information was impacted by the Data Breach.**

The California Subclass is defined as follows:

**All persons residing in California who received a notice from Super Care that their information was impacted by the Data Breach**.

63. Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest,

16

CLASS ACTION COMPLAINT

is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the Judges and Court personnel in this case and any members of their immediate families.

64. Plaintiff reserves the right to modify and/or amend the Class definition, including but not limited to creating additional subclasses, as necessary.

65. Plaintiff's claims should be certified for class-wide treatment because Plaintiff can prove the elements of each claim on a class-wide basis and all members of the proposed Class are readily accessible through Defendant's records.

66. **Numerosity.** The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff are informed and believe that the proposed Class includes approximately, or more than, 318,379 people. The precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's records.

67. **Commonality and Predominance.** This action involves common questions of law and fact to the Plaintiff and Class members, which predominate over any questions only affecting individual Class members. These common legal and factual questions include, without limitation:

 a. Whether Defendant engaged in wrongful conduct alleged herein;

 b. Whether the alleged conduct constitutes violations of the laws asserted;

 c. Whether Defendant owed Plaintiff and the other Class members a duty to adequately protect their Sensitive Information;

 d. Whether Defendant breached its duty to protect the PII and PHI of Plaintiff and other Class members;

 e. Whether Defendant knew or should have known about the inadequacies of its data protection, storage, and security;

17

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
(877) 500-8780

f.  Whether Defendant failed to use reasonable care and reasonable methods to safeguard and protect Plaintiff's and the Class's Sensitive Information from unauthorized theft, release, or disclosure;

g.  Whether the proper data security measures, policies, procedures and protocols were in place and operational within Defendant's offices and computer systems to safeguard and protect Plaintiff's and the Class's Sensitive Information from unauthorized theft, release or disclosure;

h.  Whether Defendant's conduct was the proximate cause of Plaintiff's and the Class's injuries;

i.  Whether Plaintiff and the Class suffered ascertainable and cognizable injuries as a result of Defendant's misconduct;

j.  Whether Plaintiff and the Class are entitled to recover damages; and

k.  Whether Plaintiff and the Class are entitled to other appropriate remedies including injunctive relief.

68.  Defendant engaged in a common course of conduct giving rise to the claims asserted by Plaintiff on behalf of themselves and the Class.  Individual questions, if any, are slight by comparison in both quality and quantity to the common questions that control this action.

69.  **Typicality.**  Plaintiff's claims are typical of those of other Class members because Plaintiff's PHI and PII, like that of every other Class member, was misused and improperly disclosed by Defendant.  Defendant's misconduct impacted all Class members in a similar manner.

70.  **Adequacy.**  Plaintiff will fairly and adequately represent and protect the interest of the members of the Class, have retained counsel experienced in complex consumer class action litigation, and intend to prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests to those of the Class.

18

CLASS ACTION COMPLAINT

71.   **Superiority.**  A class action is superior to all other available methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members are relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant.  The adjudication of this controversy through a class action will avoid the possibility of inconsistent and potentially conflicting adjudications of the asserted claims.  There will be no difficulty in managing this action as a class action, and the disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and to the Court.

## FIRST CAUSE OF ACTION

## NEGLIGENCE

## (On Behalf of Plaintiff and the Class)

72.   Plaintiff realleges and incorporates by reference every allegation contained in the paragraphs above, as though fully stated herein.

73.   Defendant collected, created, and maintained Plaintiff's and the Class's Sensitive Information for the purpose of providing medical services and/or treatment to Plaintiff and the Class.

74.   Plaintiff and the Class are well-defined, foreseeable, and probable group of patients whom Defendant was aware, or should have been aware could be injured by inadequate data security measures.  The nature of Defendant's business requires patients to disclose Sensitive Information to receive adequate care, including, without limitation, medical histories, dates of birth, addresses, phone numbers, and medical insurance information.  Thus, for Defendant to provide its services, it is required to use, handle, gather, and store the Sensitive Information of Plaintiff and the Class, or alternatively, hire a third party to store and protect that data.

19

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

75.    A large depository of highly valuable health care information is a foreseeable target for cybercriminals looking to steal and profit from that sensitive information.  Defendant knew or should have known that, given its repository of a host of Sensitive Information for millions of patients posed a significant risk of being targeted for a data breach.  Based on that foreseeable risk and because Defendant purposefully collected and stored patients' Sensitive Information, Defendant had a duty to reasonably safeguard its patients' data by implementing reasonable data security measures to protect against the risk of a data breach.  The foreseeable harm to Plaintiff and the Class of inadequate data security created a duty to act reasonably and safeguard the Sensitive Information.

76.    Defendant owed a duty to Plaintiff and the Class to exercise reasonable care in safeguarding and protecting their Sensitive Information in its possession from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

77.    This duty included, among other things, designing, maintaining, and testing its security systems to ensure that Plaintiff's and the Class's PHI and PII was adequately protected and secured.  Super Care further had a duty to implement processes that would detect a breach of their security system in a timely manner.

78.    Defendant also had a duty to timely disclose to Plaintiff and the Class that their Sensitive Information had been or was reasonably believed to have been compromised.  Timely disclosure is necessary so that, among other things, Plaintiff and the Class could take appropriate measures to begin monitoring their accounts for unauthorized access, to contact the credit bureaus to request freezes or place alerts and take all other appropriate precautions to prevent wrongdoers from misusing their Sensitive Information.

79.    California's Consumer Records Act requires any person or business that conducts business in the state to disclose any breach of security to any resident

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

of California whose personal information was, or is, reasonably believed to have been acquired by an unauthorized person. Cal. Civ. Code § 1798.2. Notification to the affected consumers must be made in the "most expedient time possible, without unreasonable delay" (*Id.*), but "immediately following discovery [of the breach], if the personal information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal Civ. Code §   1798.29(b).[35]

80.     Additionally, HIPAA creates industry standards for maintaining the privacy of health-related data. Defendant knew or should have known it had a legal obligation to secure and protect Plaintiff and the Class's Sensitive Information and that failing to do so is a serious violation of HIPAA.

81.     Super Care also should have known that, given the Sensitive Information it held, Plaintiff and the Class would be harmed should it suffer a Data Breach. Defendant knew or should have known that their systems and technologies for processing and securing Plaintiff's and the Class's PHI and PII had security vulnerabilities susceptible to cyber-attacks.

82.     Hackers successfully breached Defendant's network and data environments, resided there undetected, and stole a host of personal and healthcare information on hundreds of thousands of Super Care's patients.

83.     Super Care, through its actions and/or omissions, systematically failed to provide reasonable security for the data in its possession.

---

[35] The California Consumer Records Act provides that it does not apply to any providers of "health care, health care service plan, or contractor regulated by the Confidentiality of Medical Information Act," an entity covered by HIPAA," or business "regulated by state or federal law providing greater protection to personal information" than the Consumer Records Act provides. Cal. Bus. Code § 1798.81.5(e)(1), (3), & (5). Super Care is defined herein as a "contractor", however it may provide services that fall outside of the contractor definition under California's Confidentiality of Medical Information Act, and would, in that case, be required to comply with the Consumer Records Act.

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

84.    Super Care breached is duty to Plaintiff and the Class by failing to adopt, implement, and maintain reasonable security measures to safeguard their Sensitive Information, allowing unauthorized access to Plaintiff and the Class's PHI and PII, and failing to recognize the Data Breach in a timely manner. Defendant further failed to comply with industry regulations and exercise reasonable care in safeguarding and protecting Plaintiff's and the Class's PHI and PII.

85.    But for Super Care's wrongful and negligent breach of its duties, their Sensitive Information would not have been accessed and exfiltrated by unauthorized persons.

86.    As a result of Defendant's negligence, Plaintiff and the Class suffered damages including, but not limited to, ongoing and imminent threat of identity theft crimes; out-of-pocket expenses incurred to mitigate the increased risk of identity theft and/or fraud; credit, debit, and financial monitoring to prevent and/or mitigate theft, identity theft, and/or fraud incurred or likely to occur as a result of Defendant's security failures; the value of their time and resources spent mitigating the identity theft and/or fraud; decreased credit scores and ratings; and irrecoverable financial losses due to fraud.

## SECOND CAUSE OF ACTION

## NEGLIGENCE *PER SE* (15 U.S.C. § 45)

### (On Behalf of Plaintiff and the Class)

87.    Plaintiff realleges and incorporates by reference every allegation contained in the paragraphs above, as though fully stated herein.

88.    Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits "unfair ... practices in or affecting commerce" including, as interpreted and enforced by the Federal Trade Commission ("FTC"), the unfair act or practice of failing to use reasonable

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

measures to protect PII. Various FTC publications and orders also form the basis of Defendant's duty.

89. Defendant violated Section 5 of the FTC Act by failing to use reasonable measures to protect Plaintiff's and the Class's PHI and PII and not complying with industry standards. Defendant's conduct was particularly unreasonable given the nature and amount of PII it obtained and stored and the foreseeable consequences of a data breach.

90. Defendant's violation of Section 5 of the FTC Act constitutes negligence *per se*.

91. Plaintiff and the Class are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

92. Moreover, the harm that has occurred is the type of harm the FTC Act (and similar state statutes) was intended to guard against. Indeed, the FTC has pursued over fifty enforcement actions against businesses which, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiff and the proposed Class.

93. As a direct and proximate result of Defendant's negligence, Plaintiff and the Class have been injured as described herein and are entitled to damages in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## NEGLIGENCE *PER SE* (HIPAA, 45 C.F.R. § 160.102)
### (On Behalf of Plaintiff and the Class)

94. Plaintiff realleges and incorporates by reference every allegation contained in the paragraphs above, as though fully stated herein.

95. Defendant required Plaintiff and the Class to provide nonpublic Sensitive Information to obtain medical services. Through the course of providing those services, Defendant created and stored even more PHI.

23

96.     As a healthcare provider, Defendant is covered by HIPAA, 45 C.F.R. § 160.102, and is therefore obligated to comply with all rules and regulations under 45 C.F.R. Parts 160 and 164.

97.     HIPAA, 45 C.F.R. Part 164 governs "Security and Privacy," with Subpart A providing "General Provisions," Subpart B regulating "Security Standards for the Protection of Electronic Protected Health Information," Subpart C providing requirements for "Notification in the Case of Breach of Unsecured Protected Health Information."

98.     Per 45 C.F.R. § 164.306, HIPAA "standards, requirements and implementation specifications" apply to covered entities, such as Defendant. HIPAA standards are mandatory.

99.     HIPAA requires Defendant to "ensure the confidentiality, integrity, and availability of all electronic protected health information" it receives and to protect against any "reasonably anticipated threats or hazards to the security or integrity" of the Sensitive Information.  45 C.F.R. § 164.306.

100.    Defendant violated HIPAA by failing to adhere to and meet the requirements of 45 C.F.R. §§ 164.308, 164.310, 164.312, 164.314, and 164.316.

101.    Additionally, HIPAA requires timely notice of data breaches to each impacted consumer and defines timely as "in no case later than 60 calendar days after discovery of the breach." 45 C.F.R. § 164.404.  The notice must include certain minimum information, including, but not limited to a description of what the entity is doing to investigate the breach and mitigate harm. *Id.*

102.    Defendant breached its HIPAA's notification duty by failing to give timely and complete notice.  Defendant waited approximately eight months from the date it was made aware of the Data Breach to begin contacting victims and the notice did not include any explanation of that *the company* was doing to mitigate harm.

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

103.   Defendant violated HIPAA by failing to use reasonable measures to protect the PII and PHI of Plaintiff and Class.  Defendant's conduct was especially unreasonable given the nature of the Sensitive Information and the number of patients it serves, some of which are minors or patients who live below the federal poverty level, who may not have the means to expend significant amounts of time and money to fully mitigate the fallout of the Data Breach.

104.   Defendant's violation of HIPAA constitutes negligence *per se*. Plaintiff and the Class are within the group of individuals HIPAA was designed to protect and the harm to these individuals is a result of the Data Breach.

105.   As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class members suffered and continue to suffer injuries and are entitled to damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

## VIOLATION OF CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT ("CMIA") CAL. CIV. CODE § 56, *et seq*

## (On Behalf of Plaintiff and the Class)

106.   Plaintiff realleges and incorporates by reference every allegation contained in the paragraphs above, as though fully stated herein.

107.   Section 56.01(a) of the California Civil Code ("CMIA") states that a "provider of health care, health service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining authorization."

108.   CMIA further requires contractors to maintain and preserve the confidentiality of medical information. CMIA § 56.101.

109.   Pursuant to CMIA, Plaintiff and the Class members are "patients" or "natural persons, whether or not still living, who received health care services from a provider of health care and to whom medical information pertains" and Defendant

is a "contractor" or an "entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization and is not a health care service plan or provider of health care." CMIA § 56.05(k) &(d).  Within the meaning of Section 56.06 of CMIA, Defendant is also a "business organized for the purpose of maintaining medical information" or "offers software or hardware to consumers … that is designed to maintain medical information." CMIA § 56.06(a) & (b).

110.   Plaintiff's and the Class's PII and PHI, subject to the Data Breach, included "electronic medical records" or "electronic health records" as defined by CMIA § 56.101(c) and 42 U.S.C. § 17951(5).

111.   At the time of the Data Breach, Super Care maintained its Plaintiff's, the Class's, and other patients' PII and PHI.  Super Care, through inadequate and unreasonable data security, allowed an unauthorized third party to access its network and Plaintiff and the Class's personal data, without prior written authorization, as required by CMIA § 56.10.   In violation of CMIA § 56.10, Defendant further disclosed Plaintiff's and the Class's PHI and PII to persons or entities not engaged in providing health care services.

112.   As a direct and proximate result of Defendant's violations of CMIA, Plaintiff and the Class member's PHI and PII was viewed by unauthorized individuals and Plaintiff and the Class have suffered damages from the unauthorized disclosure and release of their PHI and PHI, including medical information.

113.   Plaintiff and the Class seek all available remedies under CMIA, including statutory damages in the nominal amount of $1,000 for each violation under CMIA, actual damages suffered, injunctive relief, punitive damages not to exceed $3,000, attorneys' fees, and the costs of litigation.  CMIA § 56.36.

CLASS ACTION COMPLAINT

# FIFTH CAUSE OF ACTION
## REQUEST FOR INJUNCTIVE RELIEF
### (On Behalf of Plaintiff and the Class)

114.   Plaintiff reallege and incorporate by reference every allegation contained in the paragraph above, as though fully stated herein.

115.   Pursuant to Section 526 of the California Civil Code, an injunction may be granted when it appears by the complaint that the plaintiff is entitled to the relief demanded, and the relief, or any part thereof, consists in restraining the commission or continuance of the act complained of, either for a limited period or perpetually. Cal. Civ. Code § 526.

116.   Without the injunctive relief requested herein, Plaintiff and the Class will suffer irreparable harm, and lack an adequate remedy at law, if Defendant is breached again.   The risk of additional data breaches in the future is not hypothetical, but instead, it is real, immediate, and substantial.   If Defendant is breached again, Plaintiff and the Class will lack an adequate legal remedy because the resulting injuries may not be readily quantifiable.   Additionally, Plaintiff and the Class will have to bring more lawsuits to rectify the same conduct alleged herein.

117.   The Court should enter an order enjoining Defendant from engaging in the wrongful and unlawful acts described herein and require:

    a.   Defendant to protect all PII and PHI collected through the course of its business in accordance with all applicable regulations, industry standards, and federal, state or local laws;

    b.   Defendant to protect all data collected through the course of its business in accordance with HIPAA;

    c.   Defendant to engage independent third-party security auditors/penetration testers as well as internal security personnel to

27

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

conduct testing, including simulated attacks, penetration tests, and audits on Defendant's systems on a periodic basis, and ordering Defendant to promptly correct any problems or issues detected by such third-party security auditors;

d. Defendant to run security monitoring, and conduct regular database scanning and securing checks;

e.  Defendant to train and assess its personnel on new or modified security procedures through education programs, policies, and tests;

f. Defendant to fully disclose the extent and nature of the security breach and theft; and

g. Defendant to pay for, not less than three years, identity theft and credit monitoring services for Plaintiff and the Class.

118.   Defendant is required by law to employ reasonable safety measures for storing Sensitive Information.  The cost of complying with this legal obligation, and the injunctive relief requested herein, is marginal when compared to the hardship Plaintiff and the Class will likely suffer if another breach occurs.  Harm to Plaintiff and the Class includes, but is not limited to, fraud and identity theft.

119.   The requested injunctive relief will serve the public interest through mitigating the risk of more data breaches in the future, thus decreasing or eliminating future harm to Plaintiff, the Class, and new Super Care patients receiving care from Defendant for the first time now or in the future.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for judgment in their favor as follows:

120.   Certification the Class pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure and an order that notice be provided to all Class Members;

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780

121. Designation of Plaintiff as a representative of the Class and the undersigned counsel, Zimmerman Reed LLP, as Class Counsel;

122. An award of damages in an amount to be determined at trial or by this Court

123. An order for injunctive relief, enjoining Defendant from engaging in the wrongful and unlawful acts described herein;

124. An award of statutory interest and penalties;

125. An award of costs and attorneys' fees; and

126. Such other relief the Court may deem just and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

The Plaintiff hereby demands a trial by jury of all issues so triable.

Respectfully submitted,

Dated: May 12, 2022

*/s/ Caleb Marker*
Caleb Marker, WSBA No. 57112
**ZIMMERMAN REED LLP**
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
Telephone: (877) 500-8780
Facsimile: (877) 500-8781
caleb.marker@zimmreed.com

Jason P. Johnston
(*Pro hac vice* forthcoming)
Rachel K. Tack
(*Pro hac vice* forthcoming)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
jason.johnston@zimmreed.com
rachel.tack@zimmreed.com

***Attorneys for Plaintiff and the Proposed Class***

CLASS ACTION COMPLAINT

ZIMMERMAN REED LLP
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA  90048
(877) 500-8780